ASHLEY PEARCE and CINDY LOU PEARCE,

        Plaintiffs,
v.                   **DECISION AND ORDER**
                       07-CV-718S
ETHICAL ASSET MANAGEMENT, INC.,

        Defendant.

## I. INTRODUCTION

On October 26, 2007, Plaintiffs filed a complaint alleging various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. Defendant failed to appear and defend this action, which resulted in the Clerk of the Court entering default on March 25, 2008. Presently before this Court is Plaintiffs' Motion for Default Judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.[1] For the following reasons, Plaintiffs' motion is granted.

## II. BACKGROUND

Ashley Pearce is Cindy Lou Pearce's daughter. (Complaint, Docket No. 1, ¶¶ 4, 5.) Defendant Ethical Asset Management, Inc., is a "debt collector" within the meaning of the FDCPA. (Id. at ¶ 7.)

Ashley incurred a credit card debt to Clout Visa. (Id. at ¶ 11.) After Ashley failed to pay the debt, Clout Visa employed Defendant to collect it. (Id. at ¶ 14.) In July and August 2007, Defendant left multiple messages on Ashley's telephone answering machine

---

[1] The submissions relating to this motion are filed at docket numbers 6 and 12.

1

requesting that she call "our law office" to discuss repayment of the debt. (Id. at ¶ 15.) One message threatened that Defendant would take Ashley to court if she did not return the call within 24 hours. (Id. at ¶ 16.) Cindy overheard many of these messages, including the disclosures in the messages that Ashley owed a debt. (Id. at ¶ 17.)

In August 2007, Defendant spoke with Cindy and disclosed that it was attempting to collect a debt from Ashley. (Id. at ¶ 18.) Defendant told Cindy that if Ashley did not pay the debt within 24 hours, it would take her to court and garnish her wages. (Id.) Because Cindy feared that Ashley could lose her job, she agreed to begin making monthly payments of $259. (Id. at ¶ 19.) To that end, Cindy authorized Defendant to take three draws of $259 from her checking account in September, October, and November, respectively. (Id.) Cindy then advised Ashley of this conversation. (Id. at ¶ 20.)

On August 14, 2007, Cindy called Defendant and spoke to Heather Jacobs, who identified herself as a debt collector. (Id. at ¶ 21.) Cindy advised Jacobs that she wanted to revoke the previous authorization to make monthly draws from her account, to which Jacobs responded that it was "too late to revoke." (Id.) Jacobs then asked to speak to Ashley, and advised her that Defendant was not going to take the monthly draws from Cindy's account, but instead, was going to take Ashley to Niagara County Court. (Id.) Jacobs screamed at Ashley, used profanity, and hung up on her. (Id.)

In September 2007, Defendant deducted $259 from Cindy's bank account, despite her revocation of the authorization to do so. (Id. at ¶ 22.) Cindy immediately called Defendant and requested that the payment be reversed and that no further deductions be processed. (Id. at ¶ 23.) Defendant refused Cindy's request and stated that it would make

2

similar draws in October and November 2007.[2] (Id.) As a result of the draw September 2007 draw, Cindy's bank account lacked sufficient funds to cover other checks she had written, leaving her with incurred bank charges for bounced checks. (Id. at ¶ 24.)

Plaintiffs maintain that Defendant never sent them letters advising that it intended to submit Cindy's previously-authorized payment to her bank. (Id. at ¶ 25.) Moreover, at the time of Defendant's calls, neither Defendant nor the creditor had decided to file a lawsuit against Ashley to collect the debt, and they had no intention to do so at the time the calls were made. (Id. at ¶¶ 26, 27.)

As a result of Defendant's conduct, Plaintiffs each claim to have suffered actual damages, including becoming nervous, anxious, upset, and suffering from emotional distress. (Id. at ¶¶ 28, 31.)

### III. DISCUSSION

**A.     Default Judgment Standard**

Before obtaining default judgment, a party must first secure a Clerk's Entry of Default by demonstrating, by affidavit or otherwise, that the opposing party is in default. See FED. R. CIV. P. 55(a). Once default has been entered, the allegations of the Complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

In considering whether to enter default judgment, the court must determine whether the facts alleged in the Complaint are sufficient to state a claim for relief as to each cause

---

[2] It appears from the record, however, that there was only one draw for $259, made in September 2007. (Cindy Lou Pearce Affidavit, Docket No. 12, ¶ 12.)

3

of action for which the plaintiff seeks default judgment. Further, where the damages sought are not for a sum certain, the court must determine the propriety and amount of the default judgment. See FED. R. CIV. P. 55(b)(2). Damages must be established by proof, unless the damages are liquidated or "susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). All reasonable inferences from the evidence presented are drawn in the moving party's favor. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

**B.     Liability**

   **1.     Clams under 15 U.S.C. §§ 1692e, 1692e (5), 1692e (10), 1692d, and 1692f**

Section 1692e prohibits debt collectors from using false, deceptive, or misleading representations to collect a debt. The statute provides as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> 
> . . .
> 
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken;
> 
> . . .
> 
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Section 1692d makes it generally unlawful for a debt collector to engage in any conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Section 1692f prohibits debt collectors from using

4

unfair or unconscionable means to collect or attempt to collect any debt.

Plaintiffs allege that Defendant violated 15 U.S.C. §§ 1692e, 1692e (5), 1692e (10), 1692d, and 1692f, by "falsely representing to Plaintiffs that they, or the creditor whom they were collecting for, had decided to file a lawsuit, had authorized the filing of a lawsuit, or intended to file a lawsuit to attempt to collect the subject debt." (Complaint, ¶ 30 (A).) Based on the undisputed facts taken as true, this Court finds that, but for § 1692f, Defendant violated these sections as alleged.

As noted, § 1692f prohibits debt collectors from using unfair or unconscionable means to collect or attempt to collect any debt. But the unfair or unconscionable conduct alleged must be in addition to the acts that a plaintiff alleges violate other sections of the FDCPA. See Foti v. NCO Financial Systs., Inc., 424 F.Supp.2d 643, 667 (S.D.N.Y. 2006). Here, no additional conduct is alleged to support a § 1692f claim. Thus, there is no violation of that section.

### 2. Claims under 15 U.S.C. §§ 1692b (1), 1692b (2), 1692c (b), and 1692f

Section 1692b limits a debt collector's contact with third parties to acquiring location information. Debt collectors must identify themselves, state that they are confirming or correcting location information concerning the consumer, and identify their employer only if expressly requested to do so. See 15 U.S.C. § 1692b (1). They are not permitted to advise the third party that the consumer owes a debt. See 15 U.S.C. § 1692b (2). In addition, except as provided in § 1692b, § 1692c (b) limits the individuals a debt collector may contact to the consumer, his attorney, a consumer reporting agency, the creditor, the creditor's attorney, and the debt collector's attorney.

Plaintiffs allege that Defendant violated 15 U.S.C. §§ 1692b (1), 1692b (2), and

5

1692c (b), by "disclosing the existence of Ashley Pearce's debt to Cindy Lou Pearce." (Complaint, ¶ 30 (B).)  Based on the undisputed facts taken as true, this Court finds that Defendant violated these sections, as alleged.  Plaintiffs' § 1692f claim is dismissed for lack of independent allegations supporting it.

    **3.     Claims under 15 U.S.C. § 1692f**

Section 1692f (2) prohibits debt collectors from accepting a check or other payment instrument postdated by more than five days, unless the debt collector provides written notice of its intent to deposit the check between three and ten days before making the deposit.

Plaintiffs allege that Defendant violated 15 U.S.C. § 1692f (2) by "failing to provide either Plaintiff with written notice of their intent [to] debit Cindy Lou Pearce's bank account prior to actually doing so." (Complaint, ¶ 30 (C).)  Based on the undisputed facts taken as true, this Court finds that Defendant violated § 1692f (2), as alleged.

    **4.     Clams under 15 U.S.C. §§ 1692d and 1692d (2)**

Section 1692d makes it generally unlawful for a debt collector to harass, oppress or abuse any person when collecting a debt.  As a specific example, the statute prohibits the use of obscene, profane, or abusive language.  See 15 U.S.C. § 1692d (2).

Plaintiffs allege that Defendant violated 15 U.S.C. §§ 1692d and 1692d (2) by "screaming and using profanity towards Ashley Pearce." (Complaint, ¶ 30 (D).)  Based on the undisputed facts taken as true, including that Ms. Jacobs called Ashley a "bitch," this Court finds that Defendant violated 15 U.S.C. §§ 1692d and 1692d (2), as alleged. (Ashley Pearce Affidavit, Docket No. 12-2, ¶ 9.)

### 5. Clams under 15 U.S.C. §§ 1692e, 1692e (5), 1692e (10), and 1692f (1)

Section 1692e prohibits debt collectors from using false, deceptive, or misleading representations to collect a debt. The statute provides as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken;
> . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Section 1692f (1) prohibits debt collectors from collecting any payments, unless the amount of the payment is expressly authorized by the agreement creating the debt or otherwise permitted by law.

Plaintiffs allege that Defendant violated these sections by "debiting Cindy Lou Pearce's bank account despite her previous revocation of her authorization for them to do so, and contrary to Defendant's representation that they would not do so." (Complaint, ¶ 30 (E).) Based on the undisputed facts taken as true, this Court finds that Defendant violated 1692e, 1692e (5), 1692e (10), and 1692f (1), as alleged.

### C. Damages

#### 1. Statutory Damages

Section 1692k (a)(2)(A) authorizes up to $1,000 in statutory damages per plaintiff for any violation of the FDCPA. The specific amount of statutory damages, not to exceed

$1,000, falls within the court's discretion.  See Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998).  Factors to be considered by the court in determining an appropriate statutory damages award include the frequency, persistence, and nature of the debt collector's noncompliance, the debt collector's resources, the number of individuals adversely affected, and the extent to which the debt collector's non-compliance was intentional.  See 15 U.S.C. § 1692k (b)(1).

Here, Defendant is deemed to have admitted calling Plaintiffs multiple times, improperly disclosing Ashley's debt, and making unauthorized withdrawals from Cindy's bank account.  Although these acts violate the FDCPA, they are not so persistent or egregious as to warrant the statutory maximum penalty.  Under these circumstances, each Plaintiff will be awarded $250 in statutory damages, pursuant to § 1692k (a)(2)(A).  See Estay v. Moren and Woods LLC, No. 09-CV-620A, 2009 WL 5171881, at *2 (W.D.N.Y. Dec. 22, 2009) (Plaintiff awarded $250 in statutory damages where defendant made harassing calls on more than one occasion, made empty threats of litigation, and improperly disclosed debt information to a third party); Fontana v. C. Barry & Assocs., LLC, 06-CV-359, 2007 WL 2580490, at *2 (W.D.N.Y. Sep. 4, 2007) (similar); see also Mostiller v. Chase Asset Recovery Corp., No. 09-CV-218A, 2010 WL 335023, at *2 (W.D.N.Y. Jan. 22, 2010) (awarding $150 in statutory damages where the complaint did not allege repeated calls or threats of litigation).

### 2. Actual Damages

Section 1692k (a)(1) authorizes an award of "any actual damage sustained by [any] person as a result of [a defendant's violation of the FDCPA]."  Actual damages are intended to compensate a plaintiff for "out of pocket expenses, personal humiliation,

embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA." See Mostiller, 2010 WL 335023, at *3 (quoting Milton v. Rosicki, Rosicki & Assocs., P.C., No. 02-CV-3052, 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007).

In her affidavit, Ashley described her experience in this manner:

> I felt very upset by the actions of the Defendant. I was afraid the Defendant would call me at work, which would jeopardize my job. I also was afraid of answering the phone, for fear it would be the Defendant. I began screening all of my calls, and would only answer it if I knew the caller. I also was afraid the Defendant would jeopardize the status of my car, which I had just purchased with my father. I felt very embarrassed that my mother had been involved in this matter. I felt upset by these actions for several months.

(Ashley Pearce Affidavit, Docket No. 12-2, ¶ 11.)

Cindy also describes being upset by the treatment she and Ashley received from Defendant. (Cindy Lou Pearce Affidavit, Docket No. 12, ¶¶ 13-15.) She maintains that the she incurred $70 in bank fees from Defendant's unauthorized debiting of the $259 payment, which constituted a hardship on her limited finances. (Id. at 15.) She describes the effect her interaction with Defendant had on her as follows:

> The actions of the Defendant caused me to feel upset for several months. I worried about the welfare of my daughter, and whether the Defendant was going to continue to harass her. I also was afraid to answer the telephone, for fear it was Ms. Jacobs or the Defendant again. I also felt very threatened by this company and by the fear of what steps they could take against my daughter.

(Id. at ¶ 16.)

Plaintiffs have not submitted any medical evidence in support of their claims of emotional distress. Some stress associated with Defendant's conduct in this case is to be expected. The degree of distress and humiliation described in Plaintiffs' affidavits strikes this Court as consistent with the conduct that Defendant is deemed to have engaged in. In this Court's view, actual damages of $750 for Ashley and $1,079[3] for Cindy Lou, is fair and appropriate compensation.

## D. Attorney's Fees and Costs

The FDCPA provides for the recovery of reasonable attorney's fees and costs by successful litigants. See 15 U.S.C. § 1692k (a)(3) (permitting recovery of, "in the case of any successful motion to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court"). Although Plaintiffs requested attorney's fees and costs in their complaint, they have not submitted any supporting documentation. (Complaint, ¶ 1 and Wherefore Clause ¶ (c).) Moreover, Plaintiffs did not file anything in response to this Court's February 3, 2010 Text Order, which specifically noted the lack of supporting documentation and provided Plaintiffs an additional opportunity to file submissions in support of their request. (Docket No. 13.) Accordingly, the request for attorney's fees and costs is denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment is granted. Plaintiff Ashley Pearce is awarded $250 in statutory damages and $750 in actual damages, for a total award of $1,000. Plaintiff Cindy Lou Pearce is awarded $250 in statutory

---

[3] Cindy Lou's actual damages award is $329 higher than Ashley's to account for the unauthorized September 2007 draw of $259 and the incurred $70 bank fee. (Cindy Lou Pearce Affidavit, ¶¶ 14, 15.)

damages and $1,079 in actual damages, for a total award of $1,329.  The request for attorney's fees and costs is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' Motion for Default Judgment (Docket No. 6) is GRANTED.

FURTHER, that the Clerk of the Court is directed to enter judgment in favor of Plaintiff Ashley Pearce against Defendant in the amount of $1,000.

FURTHER, that the Clerk of the Court is directed to enter judgment in favor of Plaintiff Cindy Lou Pearce against Defendant in the amount of $1,329.

FURTHER, that the Clerk of the Court shall close this case upon entry of judgment.

SO ORDERED.

Dated:  March 10, 2010
        Buffalo, New York

                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    Chief Judge
                                    United States District Judge